427 P.2d 946

**MARICOPA COUNTY MEDICAL SOCIETY,**
an Arizona corporation, Appellant,

v.

**O. J. BLENDE, Appellee.**

**No. I CA–CIV 357.**

Court of Appeals of Arizona.

May 19, 1967.

Rehearing Denied June 16, 1967.

Review Granted Sept. 21, 1967.

Snell & Wilmer, by Roger W. Perry and Arthur P. Greenfield, Phoenix, for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton, by John J. Flynn and Roger W. Kaufman, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal by the Maricopa County Medical Society, an Arizona corporation, from an order for the issuance of a peremptory writ of mandamus and the issuance of a peremptory writ of mandamus directing that the appellant Maricopa County Medical Society admit O. J. Blende as a permanent member of the said Society and directing that after the admission of Dr. Blende to membership the Society shall take no formal or informal action "designed to prevent petitioner from obtaining membership on the staffs of any hospitals in Maricopa County, Arizona", and further that after admitting petitioner to membership, petitioner shall be retained as a member "unless a due process hearing be held and facts be proved establishing good reasons for his expulsion".

This Court has jurisdiction pursuant to 12–2101, subsecs. A, B, C, and E, A.R.S.

The rather involved factual and legal background necessary for an understanding of this case and our decision is as follows. On 12 November 1956 Dr. Blende, a medical doctor admitted to practice under the laws of the State of Arizona, applied for probationary or term membership in the Maricopa County Medical Society. On 1 April 1957 he was so admitted. The constitution and bylaws of the Maricopa County Medical Society provide that within three months of the termination of the two year term membership the applicant may apply for permanent membership in the association.

On 6 March 1959 Dr. Blende applied for permanent membership. The Board of Censors of the appellant Society investigated the applicant and held two meetings to consider certain matters relating to Dr.

Blende's qualifications. After the investigation was concluded, the Board of Censors reported to the Society. At a meeting held 6 June 1960 the Society voted upon the application of Dr. Blende for permanent membership and denied it.

Dr. Blende brought a mandamus action against the Society and the Board of Censors and, after judgment in favor of the Society, appealed to the Supreme Court of the State of Arizona. The Arizona Supreme Court in the case of Blende v. Maricopa County Medical Society, 96 Ariz. 240, 393 P.2d 926 (1964) ruled in favor of Dr. Blende, and for the purposes of our consideration made the following pertinent statements and observations:

"We have examined the Society's articles Falcone decision. *The interests in freedom of association and in autonomy for private associations make it desirable to allow private groups to determine their own membership.* But when a medical society controls a doctor's access to hospital facilities, then the society's exercise of a quasi-governmental power is the legitimate object of judicial concern.

\*    \*    \*    \*    \*    \*

"We have examined the Society's articles and bylaws and find that they establish two things: first, the articles and bylaws indicate no formal relation exists between membership in the Society and maintenance of staff privileges in local hospitals; second, the Society complied with the procedural requirements of its articles and bylaws when considering the appellant's application for membership and, therefore, appellant's allegations of procedural irregularity and bad faith are without merit. But there still may exist the question of a *definite, though informal relation* between membership in the Society and maintenance of staff privileges in local hospitals. *If appellant can show the existence of such a relation, then his membership application may not be denied arbitrarily,* but only on a showing of just cause established

by the Society under proceedings embodying the elements of due process.

* * * * * *

"In making such an inquiry, the court must *guard against unduly interfering with the Society's autonomy by substituting judicial judgment for that of the Society in an area where the competence of the court does not equal that of the Society.*

* * * * * *

"Therefore, the scope of judicial review of the Society's actions should be narrow. If the Society has refused membership on the basis of factual findings supported by substantial evidence and reached through the application of a reasonable standard—one which comports with the legitimate goals of the Society and the rights of the individual and the public—then judicial inquiry should end. Broad judicial review would unduly interfere with the autonomy of the Society and its competence to determine its membership affairs." Blende, 96 Ariz. 245, 246, 393 P.2d 929, supra. (Emphasis ours)

The opinion also stated:

"We agree that no real distinction exists between expulsion and exclusion where nonmembership seriously impairs a person's ability to pursue his occupation." Blende, 96 Ariz., Note 1, page 243, 393 P.2d page 928, supra.

The matter was returned to the Superior Court and was again before the Supreme Court in the matter of Blende v. Stanford, 98 Ariz. 251, 403 P.2d 807 (1965). In that case the court stated:

"There are two principle issues for determination in the litigation. First, whether membership in the Society was a prerequisite for maintenance of staff privileges in local hospitals and, if so, second, whether petitioner's application for membership was denied without just cause established in proceedings embodying the elements of due process. Instead of proceeding with the matter on the

issues as we directed, the trial court granted respondents' motion for a separate hearing on this issue.

"'* * * Whether the Petitioner, O. J. Blende, has been deprived of staff membership in the hospitals of Maricopa County, Arizona, by reason of a definite relationship between membership in the Society and maintenance of staff privileges in the hospitals * * *'

This changed the issues by requiring petitioner to prove not only the existence of an informal relationship but also that such relationship was the cause of his being deprived of staff membership in local hospitals. This is contrary to our positive pronouncement of the law of the case. * * *

"Respondents assert that it was necessary for the trial court to frame the issues as it did, otherwise there could be no showing of an injury to petitioner. We do not agree. Our former opinion settled the law. *If membership in the Society is a condition to staff privileges in a hospital, petitioner may not arbitrarily be denied membership even though there may be other reasons he is unable to qualify for staff privileges in the hospitals.* The action of the trial court in ordering separate hearings on the issues is consistent with our former decree; but, as pointed out, the issues were incorrectly framed." Blende, 98 Ariz. 253, 254, 403 P.2d 807, supra. (Emphasis ours)

Trial was held on 14 December 1965 before the court sitting without a jury. At the conclusion of the trial the court ruled in favor of the petitioner on the first issue stating:

"All right, I have come to the conclusion that there is a requirement to have membership of [sic] the Society in order to have staff privileges so that's it."

At the time the attorneys for the medical society made the following statement:

"* * * although our [respondent society's] hearing was in good faith and

in full compliance with [our] by-laws, there's no question about the fact that the hearing does not concord with what the Supreme Court has declared to be a hearing, due process hearing in this case, we not [sic] presume to take this Court's time to attempt to adjudicate a matter which we would not in good faith present, so it's not going to be presented * * *"

The order of the court for the issuance of the writ of mandamus stated as follows:

"THEREFORE, IT IS HEREBY OR-DERED that a peremptory writ of mandamus issue from this Court under the hand and seal of the Clerk hereof directed to Maricopa County Medical Society. The writ shall order the respondents to proceed to grant petitioner, O. J. Blende, the following relief:

"(a) Admit petitioner to membership as a permanent member in the respondent society on or before Monday, the 17th day of January, 1966, or within ten days after this writ of mandamus has been approved as to form and signed by this Court, whichever date shall be the earlier.

"(b) After admitting petitioner to membership, you shall take no formal or informal action designed to prevent petitioner from obtaining membership on the staffs of any hospitals in Maricopa County, Arizona.

"(c) After admitting petitioner to membership in the respondent society, you shall retain petitioner as a member unless a due process hearing be held and facts be proved establishing good reasons for his expulsion.

"IT IS FURTHER ORDERED that costs of suit shall be awarded to petitioner in accordance with the memorandum of costs which is to be attached to the writ."

An appeal was taken from the order and the issuance of the writ, and after a hearing we granted a stay pending determination of the matter on appeal.

We read the two Supreme Court cases involved as requiring that we determine whether the evidence before the Superior Court in this case is sufficient from which the court could find that an *"informal though definite relationship"* exists or existed between the Medical Society and the hospitals in Maricopa County relative to staff privileges at said hospitals.

At the trial it was stipulated that there were 27 hospitals in Maricopa County. The bylaws of various hospitals in Maricopa County indicated that while several hospitals previously required membership in the Maricopa County Medical Society as a prerequisite to being admitted to staff privileges, most of the hospitals at the time of the trial required only that the person applying for staff membership be "eligible" for membership in the Maricopa County Medical Society.

The constitution and bylaws of Good Samaritan Hospital in Phoenix is a case in point. The 1945 bylaws provided that in addition to being a graduate of a recognized medical school, licensed to practice in the State of Arizona, and other requirements, membership on the staff "shall be restricted to * * *

"members in good standing in the Maricopa County (Arizona) Medical Society * * *."

By 1957 the bylaws provided that membership would be limited to those

"* * * eligible for membership in the Maricopa County Medical Society * * *."

The 1963 bylaws were silent as to the Maricopa County Medical Society and read as follows:

"Each medical member shall be a graduate of a recognized school of medicine, legally licensed to practice medicine and surgery in the State of Arizona, competent in his respective field, worthy in character and in matters of professional ethics."

The bylaws of Northwest Hospital, Glendale, Arizona, provided that applicants for medical staff membership should be:

" * * * a member in good standing of the Maricopa County Medical Society and the Arizona Medical Association * * *."

Dr. Blende applied for membership in said hospital and received the following:

" * * *

"I regret to inform you that one of the requirements for membership in the Northwest Hospital is membership in the Maricopa County Medical Society.

"We are therefore returning your application. * * *."

Dr. Kerr of Mesa Lutheran Hospital, testified that he was not sure how he would interpret the phrase "eligible for membership" in the County Society. He also testified that there was one doctor to his knowledge who had staff privileges in Mesa Lutheran who was not a member of the Maricopa County Medical Society.

The testimony before the trial court is sufficient from which the court could find that various hospitals in the Phoenix area relied upon membership in the Maricopa County Medical Society as a basis for admitting applicants to staff privileges, and at least one hospital had, at the time of the trial, a requirement that the applicant be a member of the said association. Viewing the testimony in a light most favorable to upholding the decision of the trial court, Mortensen v. Berzell Investments Co., 2 Ariz.App. 571, 410 P.2d 689 (1966), we find no evidence to indicate that the Maricopa County Medical Society brought this about or exercised influence upon the said hospitals to make membership in the Society a basis for admission to staff privileges or membership. The testimony is also ample to indicate that at the time of the trial nonmembers (including Dr. Blende) of the Society had, in fact, staff privileges in hospitals in Maricopa County.

We must ask the question whether the actions of the hospitals without any demonstrable evidence of influence or urging by the Maricopa County Medical Society in relying upon membership (or eligibility for membership) in the respondent Society constitutes the "definite, though informal, relation between membership in the Society and maintenance of staff privileges".

In order to discuss the problem we must first look at the case of Falcone v. Middlesex County Medical Society, 34 N.J. 582, 170 A.2d 791, 89 A.L.R.2d 952 (1961). Although the Arizona Supreme Court relied strongly on the case of *Falcone*, supra, it should be noted that the factual basis of *Falcone* can be distinguished from the case at bar. The *Falcone* case, supra, stated:

"It seems entirely evident that Dr. Falcone cannot successfully continue his practice of surgery and obstetrics or properly serve his surgical and obstetric patients without the use of local hospital facilities; he testified that in order to earn a livelihood it is necessary 'to belong to the local society' for 'otherwise, you cannot use the hospitals'. The virtual monopoly which the Society possesses in fact over the use of local hospital facilities results in the well known interrelationship between the County Society, the State Medical Society, the American Medical Association and the Joint Commission on Accreditation of Hospitals."

The *instant case does not indicate* that the Maricopa County Medical Society contradicted or dictated appellant's membership in various hospitals or that his economic well-being depended upon his membership. Indeed, the Arizona Supreme Court stated:

"We have examined the Society's articles and bylaws and find that they establish two things: first, the articles and bylaws indicate *no formal relation* exists between membership in the Society and maintenance of staff privileges in local hospitals; * * *" Blende v. Maricopa County Medical Society, 96 Ariz. 244, 393 P.2d 929, supra. (Emphasis ours)

The opinion went on to state:

"But there still may exist the question of a definite, though informal relation be-

tween membership in the Society and maintenance of staff privileges in local hospitals." Blende, 96 Ariz. 244, 245, 393 P.2d 930, supra.

We take the word "relation" as used in the phrase "no formal relation" and the phrase "informal relation" to mean the same thing. If the bylaws of the various hospitals in this case do not indicate a "formal relation" the record below is equally silent as to an "informal relation" between the Society and the hospitals. The fact that hospitals in Maricopa County may wrongfully exclude Dr. Blende because of his failure to be a member in a voluntary, professional organization such as the Maricopa County Medical Society does not in and of itself establish that a "definite though informal relation" exists, any more than the requirement in the bylaws of one hospital that applicants must be a member of the Society establishes a "formal relation". We do not believe that a hospital may unilaterally impose upon the Maricopa County Medical Society the "relation" which our Supreme Court envisioned.

While there is testimony from which the court below could find that various other hospitals in Maricopa County rely upon the information received from the Maricopa County Medical Society and membership or eligibility for membership in said Society as an aid in determining maintenance of staff privileges, there is nothing in the record to indicate that the Maricopa County Medical Society formally or informally does anything to require, encourage or abet this action on the part of the hospitals.

We hold that reliance by the hospitals upon the membership of the Society does not in and of itself establish that "informal though definite relation" between the two entities which would justify the interference of the court in the admission to and maintenance of membership in the respondent Medical Society. That there may be this relationship as the court found to exist in New Jersey (in *Falcone*, supra), we do not comment. The evidence does not establish such a relationship in the instant case.

Judgment of the lower court is reversed.

DONOFRIO, J., and WILLIAM W. NABOURS, Superior Court Judge, concur.

NOTE: Judge HENRY S. STEVENS having requested that he be relieved from consideration of this matter Judge WILLIAM W. NABOURS was called to sit in his stead and participate in the determination of this decision.